NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

AL-QAADIR GREEN,

        Plaintiff,

v.

STEVEN JOHNSON, et al.,

        Defendants.

Civil Action No. 3:15-cv-8531-BRM-TJB

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Al-Qaadir Green's ("Plaintiff") motion requesting: (1) to amend the Complaint; (2) a temporary restraining order ("TRO") requiring defendants provide him an involuntary protective custody ("IPC") hearing and release him from IPC to general population; and (3) a preliminary injunction hearing regarding his TRO request. (ECF No. 17.) Plaintiff's application for *in forma pauperis* status was previously granted (*see* ECF No. 3); therefore, the Court is required to screen the Amended Complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. Defendants Timothy Maines ("Maines"), Ralph Dolce ("Dolces"), and Tina Cortes ("Cortes")[1] oppose the request for injunctive

---

[1] The summons for defendant Antonio Campos ("Campos") was returned unexecuted with a note indicating he retired. (ECF No. 8.) To date, no appearance has been made on his behalf. Defendants Steven Johnson ("Johnson") and Steven D'Ilio ("D'Ilio") were dismissed upon the Court's *sua sponte* screening prior to the issuance of summonses. (ECF No. 3.)

1

relief. (ECF No. 18-1.) For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff's Amended Complaint (ECF No. 17-2), read liberally, alleges he has been denied due process under the Fourteenth Amendment in connection with prison officials' routine reviews of his placement in IPC at New Jersey State Prison ("NJSP"), where he has been housed continually since November 29, 2012.[2] (*See* ECF No. 17-2.)

In a prior Screening Memorandum and Order, the Honorable Freda L. Wolfson, U.S.D.J. dismissed the Complaint without prejudice as to Defendant Administrators Steven Johnson and Stephen D'Ilio, but permitted the Fourteenth Amendment due process claims to proceed against the remaining Defendants. (*See* ECF No. 3.) Plaintiff subsequently sought leave to supplement his Complaint. (ECF No. 10.) The Honorable Tonianne J. Bongiovanni, U.S.M.J. granted Plaintiff's request, but directed him to file a single all-inclusive Amended Complaint. (*See* ECF No. 16.) Rather than filing an amended complaint, Plaintiff filed another motion to amend his Complaint along with a proposed amended complaint and motion for injunctive relief, both of which are presently before this Court. (ECF No. 17.)

---

[2] Although Plaintiff also refers to his "Eighth Amendment" due process rights, the Court does not construe Plaintiff to assert any claims under the Eighth Amendment, which requires a prisoner to show that he has been deprived of "'the minimal civilized measure of life's necessities,' such as food, clothing, shelter, sanitation, medical care, or personal safety." *Panton v. Nash*, 317 F. App'x 257, 258 (3d Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994)).

2

## II. MOTION TO AMEND AND SCREENING

Plaintiff's motion to amend is **GRANTED**, however the Court will screen the allegations in the Amended Complaint for dismissal pursuant to 28 U.S.C. 1915(e)(2)(B).

### A. Legal Standard

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), district courts must review the complaints in all civil actions in which a prisoner is proceeding *in forma pauperis*, see 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee, *see* 28 U.S.C. § 1915A. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is

"not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. Id. (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Decision**

In his Amended Complaint, Plaintiff appears to have added two new Defendants, Assistant Superintendent Robert Chetirkin ("Chetirkin") and Hearing Officer L. Jantz ("Jantz") (ECF No. 17-2 ¶¶ 4(i), (j)) and new allegations regarding Defendants Chetirkin, Jantz, and Johnson (*see id.* ¶¶ 58-87). Like his original Complaint, Plaintiff's Amended Complaint alleges he has been denied due process under the Fourteenth Amendment in connection with prison officials' routine reviews of his placement in IPC at NJSP. (*See* ECF No. 17-2.) In addition to the Fourteenth Amendment due process claim, the Amended Complaint also attempts to allege a First Amendment/due process claim for denial of access to the courts, an Eighth Amendment due process claim, and constitutional claims premised on the denial of his grievances.

It is undisputed that a prisoner's placement in solitary confinement does not, in itself, violate the Constitution. *See Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded on other grounds by statute*, Prison Litigation Reform Act, 42 U.S.C. § 1997 *et seq.*, as recognized in *Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). Under certain circumstances, however, a state prisoner may state a due process claim in connection with his continued, ongoing placement in solitary confinement or protective custody. *See, e.g., Wells v. Nelson*, No. 13-6024, 2014 WL 5148806, at *2-3 (D.N.J. Oct. 14, 2014).

"In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Protected liberty or property interests generally arise either from the Due Process Clause or from state-created statutory entitlement. *See Bd. of Regents v. Roth*, 408 U.S. 564, 575 (1972). In the prison setting, protected liberty interests may be created by state law, but such creation is limited to those situations where deprivation of an interest "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wells,* 2014 WL 5148806, at *2 (citing *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (announcing a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees and concluding that state-created liberty interests could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life")). As such, inmates held in segregated custody in prison may have a Fourteenth Amendment protected liberty interest only if the conditions of the segregated custody "impose atypical and significant hardship on the inmate" as compared to the general population. *Id.*

In considering what constitutes "atypical and significant hardship" within the prison setting, the Third Circuit looks to the conditions and duration of the prisoner's segregated confinement. *See Shoats*, 213 F.3d at 144 (considering "the amount of time the prisoner was placed into disciplinary segregation; and . . . whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates"); *Griffin v. Vaughn*, 112 F.3d 703, 708–09 (3d Cir. 1997) ("If an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship, and accordingly, whether due process protection has been triggered."). The relevant comparison is to the conditions

faced by prisoners in the general population. *See Williams v. Sec. Penn. Dep't of Corr.*, 848 F.3d 549, 564-65 (2017).

Read liberally, Plaintiff's Amended Complaint alleges he has been in IPC for nearly five years and is housed under significant restrictions. (*See* ECF No. 17-2 ¶¶ 15, 46-51.) At this early stage of the proceedings, the Court finds Plaintiff allegations regarding the length and conditions of his confinement in protective custody sufficient to trigger due process protections and moves on to the next step in analyzing a procedural due process claim. *See Shoats*, 213 F.3d at 143.

Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. *See id.* (citing *Morrissey*, 408 U.S. at 481). In *Hewitt v. Helms*, 459 U.S. 460 (1983) (retreated from on other grounds in *Sandin*, 515 U.S. at 484), the Supreme Court considered whether prison inmates were entitled to due process before their initial placement in solitary confinement for administrative – rather than disciplinary – reasons. The Court expressly rejected the idea that due process required a "detailed adversary proceeding," on the ground that it would not "materially assist" the decision to be made. *Id.* at 473-74. The Court further held that in these situations, an "informal, nonadversary review" at which the prisoner has the opportunity to state his views, satisfies the requirements of due process:

> An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.

*Id.* at 476; *see also Shoats*, 213 F.3d at 144-45 (relying on *Hewitt* and finding that prisoner had not been denied due process). Although the Third Circuit has held that periodic review of inmates

indefinitely confined to administrative custody meets due process requirements, *see Shoats*, 213 F.3d at 147, it has also held that due process may be violated by perfunctory or "sham" review hearings. *See Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986) (holding that a due process violation occurred where prison officials applied justifications for segregation in "rote fashion"); *see also Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014) (relying on *Sourbeer* but finding no evidence on summary judgment that hearings were perfunctory or inadequate). Thus, although "the detailed procedural schema" set out in prison regulations need not be adhered to in order to satisfy due process, *see Drayton v. Robinson*, 719 F.2d 1214, 1219 (3d Cir. 1983), "sham" review hearings violate due process:

> As we understand the district court's opinion, it found that due process was violated because the monthly reviews, from April 1977 on, were perfunctory, thus denying Sourbeer the most fundamental right of due process: a meaningful opportunity to be heard. *See Paratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). . . . As this court has noted previously, "[t]o insure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the [F]ourteenth [A]mendment."

*Sourbeer*, 791 F.2d at 1101 (quoting *Mims v. Shapp*, 744 F.2d 946, 954 (3d Cir. 1984)) (citing *Hewitt v. Helms*, 459 U.S. at 477 n.9).

The Court construes Plaintiff's Amended Complaint to allege Defendants Cortez, Dolce, and newly added Defendant Jantz violated Plaintiff's due process rights by failing to provide him with adequate routine reviews of his placement in protective custody. The Court also construes Plaintiff to allege that Defendants Johnson, Campos, Maines, Barnes, and Chetirkin ("Administrator Defendants"), violated his due process rights by refusing to provide Plaintiff with

a final administrative determination from which he could appeal to the New Jersey state courts.[3] At this early stage, these Fourteenth Amendment due process claims may **PROCEED** based on the alleged inadequacy or "sham" nature of Plaintiff's protective custody review hearings.[4]

However, Petitioner's claim that he was denied access to the courts—premised on the Administrator Defendants' refusal to rule on his appeal of the protective custody determinations—is dismissed. The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989). *See also Peterkin v. Jeffes*, 855 F.2d 1021, 1036 n. 18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). "[A] prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent 'actual injury' by hindering his efforts

---

[3] As explained below, a failure to respond or an unsatisfactory response to grievances does not state a claim for relief under § 1983. Here, it is not clear from the Complaint which of the Administrator Defendants failed to rule on Plaintiff's appeal and which of the Defendants simply upheld Plaintiff's grievances regarding the status of the appeal. Defendants are free to seek summary judgment should the record show that they merely denied or failed to answer his grievances.

[4] Because the Court has determined that Plaintiff states a claim for relief, the Court need not decide at this time whether Defendants' alleged failures to comply with numerous provisions of the New Jersey Administrative Code violate Plaintiff's due process rights.

to pursue such a claim." *Banks v. Fraiser*, No. 06-4152, 2007 WL 38909, at *4 (D.N.J. Jan. 4, 2007) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). Specifically:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit.

*Monroe*, 536 F.3d at 205-06 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, as explained by the Third Circuit, prisoners bringing access to the court claims "must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* (citing *Christopher*, 536 U.S. at 416–17); *see also Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (finding that a plaintiff does not establish a constitutional violation when he establishes only that he had a "mere hope" that he would prevail on the underlying claim). Furthermore, conclusory allegations that an inmate suffered prejudice will not support an access-to-courts claim. *Duran v. Merline*, 923 F. Supp. 2d 702, 722-23 (D.N.J. 2013) (citing *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y.1999)).

Although Plaintiff alleges the Administrator Defendants refused to provide him with a final determination with respect to his periodic custody reviews, he does not allege he attempted to present his claim to the Appellate Division or that the Appellate Division refused to hear his appeal because he lacked a final administrative determination. Because Plaintiff cannot satisfy the "lost claim" requirement, Plaintiff's access to the courts claim is **DISMISSED**.

Plaintiff's claim that Prison Administrators violated his constitutional rights by ignoring and providing unsatisfactory responses to his grievances is likewise dismissed. It is well-established that prisoners do not have a constitutional right to an effective grievance process.

"[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim . . . based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011). As such, these claims are **DISMISSED** as to all Defendants.

Furthermore, to the extent Plaintiff is attempting to allege violations of his rights under the Eighth Amendment, he must show that he has been deprived of "'the minimal civilized measure of life's necessities,' such as food, clothing, shelter, sanitation, medical care, or personal safety." *Panton v. Nash*, 317 F. App'x 257, 258 (3d Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 834 (1994)). Although the Amended Complaint refers to "Eighth Amendment due process rights," Plaintiff's due process rights are grounded in the Fourteenth Amendment, and the Amended Complaint fails to provide sufficient facts to state a separate claim for relief under the Eighth Amendment. As such, the claims arising under the Eighth Amendment are **DISMISSED**.

Finally, although the Amended Complaint lists Administrator Stephen D'Ilio as a Defendant, Plaintiff has not provided additional facts regarding this Defendant's participation in the alleged constitutional violations. The allegations against this Defendant are conclusory at best premised on *respondeat superior* liability, which is not a basis for § 1983 liability. (*See* ECF No. 17-2 ¶¶ 4(b), 26.) Therefore, the Amended Complaint is **DISMISSED** as to Defendant D'Ilio.

### III. INJUNCTIVE RELIEF

#### A. Legal Standard

A TRO issued with notice and hearing may be treated as a preliminary injunction. *See NutraSweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997). Injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994) (internal quotation marks omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). To obtain a temporary restraining order or preliminary injunction, the moving party must show: "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc.*, 369 F.3d at 708. The "failure to establish any element [of that test] renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). The moving party bears the burden of a "clear showing of immediate irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (quoting *ECRI v. McGraw-Hill*, 809 F.2d 223, 226 (3d Cir. 1987)); *see Louis v. Bledsoe*, 438 F. App'x 129, 131 (3d Cir. 2011). Establishing the mere "risk of irreparable harm is not enough." *Id.* The primary purpose of a "preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Because Plaintiff is a prisoner litigant, the Court must also consider the Prison Litigation Reform Act ("PLRA") before it can grant injunctive relief. The PLRA mandates that four additional criteria be met:

> (1) the relief must be narrowly drawn; (2) the relief must extend no further than necessary to correct the violation of the federal right; (3) the relief must be the least

intrusive means necessary to correct the violation of the federal right; and (4) substantial weight must be given to any adverse impact on public safety or the operation of the criminal justice system that might be caused by the relief.[5]

*Planker v. Ricci*, No. 07-2679, 2010 WL 4447281, at *2 (D.N.J. Nov. 1, 2010) (citing 18 U.S.C. 3626(a)(2)).

### B. Decision

Plaintiff, on notice to Defendants, asks this Court for (1) a TRO requiring Defendants to provide him with an IPC hearing to release him from IPC to general population and (2) a preliminary injunction hearing regarding his TRO request. Plaintiff fails to make the requisite "showing of immediate irreparable injury," *Hohe*, 868 F.2d at 72, and therefore fails to establish the factors weigh in favor of granting injunctive relief, *NutraSweet Co.*, 176 F.3d at 153 (requiring all elements be established). Plaintiff alleges, in a conclusory fashion and without support, he has been denied due process under the Fourteenth Amendment in connection with Defendants' routine reviews of his placement in IPC. Although Plaintiff has, at this earlier stage, stated certain claims against some Defendants sufficient to pass screening, *see supra* Section II, the Court finds no support in Plaintiff's motion or amended complaint to grant injunctive relief. The primary purpose of a "preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," *Camenisch*, 451 U.S. at 395, and Plaintiff has not provided this Court with any reason why relief cannot be granted through the normal course of the litigation, after discovery and on the merits. Accordingly, Plaintiff fails to establish he is entitled to emergent relief, and his request for a TRO and preliminary injunction hearing is **DENIED**.

---

[5] Because injunctive relief is denied, the Court declines to engage in a full discussion of all criteria, and will only discuss them below as applicable.

## IV. CONCLUSION

For the reasons set for the above, Plaintiff's Motion to Amend is **GRANTED** but the following claims are **DISMISSED** from the Amended Complaint: (1) denial of access to courts; (2) violation of constitutional rights based on Defendants' alleged ignoring and providing unsatisfactory responses to his grievances; (3) violation of Eighth Amendment rights; and (4) all claims against D'Ilio. Plaintiff's Motion for a TRO and Preliminary Injunction is **DENIED**.

Date: August 31, 2017
　　　　　　　　　　　　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**