UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AL-QAADIR GREEN,** | Civil Action No. 15-8531 (ZNQ) (TJB) |
| Plaintiff, | |
| v. | **OPINION** |
| **STEVEN JOHNSON, et al.,** | |
| Defendants. | |

Plaintiff Al-Qaadir Green, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983. (Second Am. Compl., ECF No. 72.) Presently before the Court is Defendants' Second Motion for Summary Judgment. (Defs.' Second Mot. for Summ. J., ECF No. 75.) For the reasons below, the Court will grant summary judgment as to Plaintiff's claims to the extent they seek punitive damages and injunctive relief, but the Court will deny the remainder of Defendants' motion.

### I. FACTUAL BACKGROUND

Plaintiff is serving a life sentence for murder, robbery, and weapon possession. (Defs.' Statement of Uncontested Material Facts in Supp. of Defs.' Second Mot. for Summ. J., ECF No. 75-1 ¶ 1.) On or around July 22, 2011, Plaintiff was involved in a physical altercation with two other inmates. (*Id.* ¶ 5.) After the incident, officials charged Plaintiff with institutional disciplinary infractions and placed him in Administrative Segregation ("AdSeg") pending disposition of the charges. (*Id.* ¶ 8.) During this time, the Special Investigation Division ("SID") investigated the July 22, 2011 incident. (*Id.* ¶ 9.)

The SID investigation found that the incident was gang related and concluded that Plaintiff's placement in protective custody was necessary to ensure his safety and the orderly operation of the facility. (*Id.* ¶¶ 9–13.) Consequently, officials placed Plaintiff in Prehearing Involuntary Protective Custody on October 23, 2012 and provided Plaintiff written notice of this placement the same day. (*Id.* ¶ 14.)

On November 16, 2012, officials served Plaintiff with notice of his Protective Custody Hearing scheduled for November 29, 2012. (*Id.* ¶ 15.) At the hearing, the Hearing Officer determined that Plaintiff should remain in Involuntary Protective Custody ("IV. P.C.") due to concerns for his safety. (*Id.* ¶ 16.)

Pursuant to New Jersey law, officials should have provided Plaintiff with an annual review hearing in 2013 regarding his continued placement in IV. P.C., but officials, for unknown reasons, failed to conduct this review. (Defs.' Br. in Supp. of Defs.' Second Mot. for Summ. J., ECF No. 75-1, at 20.) Rather, officials served Plaintiff with notice of his first review hearing on July 29, 2014 and held the hearing on July 31, 2014. (Defs.' Statement of Uncontested Material Facts ¶ 19.)

In 2014, SID again investigated the facts surrounding Plaintiff's placement and determined that he was still affiliated with a gang. (*Id.* ¶ 18.) As a result, at the July 31, 2014 hearing, the Hearing Officer recommended that Plaintiff remain in protective custody out of concerns for Plaintiff's safety. (*Id.* ¶ 21.)

A similar process occurred each year for the next three years. (*See id.* ¶¶ 23–29.) At each annual review hearing, the Hearing Officer determined that Plaintiff should remain in IV. P.C. out of concerns for his safety. (*See id.*) Then, on May 29, 2018, after reviewing a SID investigation,

officials determined that the threat to Plaintiff's safety was no longer an issue and released him to general population after approximately five and a half years in IV. P.C. (*See id.* ¶ 30.)[1]

## II. PROCEDURAL HISTORY

While still in IV. P.C., Plaintiff filed the instant suit on December 9, 2015. (*See* Compl., ECF No. 1.) In the Complaint, Plaintiff alleges that the overall duration and conditions of his confinement as well as deficiencies in his initial placement hearing and routine review hearings violated his constitutional rights. (*See generally id.*) Specifically, Plaintiff alleges that officials confined him to a single inmate cell for all but ten minutes per day to take a shower and one hour and forty-five minutes two days a week for outdoor recreation. (*Id.* ¶ 47.) According to Plaintiff, outdoor recreation was inside an 8'x12' cage with no form of exercise. (*Id.* ¶ 48.) Plaintiff also alleges that officials did not permit him contact with other inmates, did not allow him contact visits with family or friends unless he took a behavior modification program, and did not permit him to partake in other institutional or educational programs. (*Id.* ¶¶ 49–51.) Moreover, Plaintiff alleges that officials conducted his review hearings in a perfunctory manner, reusing the same SID report over and over to justify his continued confinement. (*See id.* ¶ 36.) Plaintiff named Steven Johnson, Steven D'Ilio, Antonio Campos, Timothy Maines, R. Dolce, and T. Cortes as defendants in this matter. (*See id.* at 1.)

In a prior Screening Memorandum and Order, this Court dismissed the Complaint without prejudice as to Defendants Steven Johnson and Stephen D'Ilio, but permitted Plaintiff's Fourteenth Amendment due process claims to proceed against the remaining defendants. (*See* July 13, 2016 Mem. and Order, ECF No. 3.) Plaintiff subsequently sought leave to supplement his Complaint. (Pl.'s Mot. to File Suppl. Compl., ECF No. 10.) This Court granted Plaintiff's request but directed

---

[1] Plaintiff's opposition papers do not challenge any of the facts above. (*See* Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 82.)

3

him to file a single all-inclusive Amended Complaint. (*See* Oct. 19, 2016 Letter Order, ECF No. 16.) Rather than filing an amended complaint, however, Plaintiff filed a motion to amend his Complaint along with a proposed amended complaint that raised new allegations against Defendants Chetirkin, Jantz, and Johnson and named two new Defendants, Robert Chetirkin and Hearing Officer L. Jantz. (*See* Pl.'s Mot. to Am. Compl., ECF No. 17.)

In an opinion dated August 31, 2017, this Court granted Plaintiff's motion to amend and screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (*See* Aug. 31, 2017 Op., ECF No. 21.) This Court construed the Amended Complaint as alleging: (1) a Fourteenth Amendment procedural due process violation against Defendants Cortez, Dolce, and Jantz in connection with prison officials' routine reviews of his placement in IV. P.C.; (2) a First Amendment/due process claim against Defendants Johnson, Campos, Maines, Barnes, and Chetirkrin for denial of access to the Court; (3) an Eighth Amendment due process claim against all Defendants; and (4) constitutional claims against all Defendants premised on the denial of his grievances. (*Id.* at 5, 8–11.)

With respect to Plaintiff's Fourteenth Amendment claims regarding reviews of his placement in IV. P.C., this Court found Plaintiff's allegations of a liberty interest in being free from prolonged restrictive confinement sufficient to survive screening and proceeded the claims based on the alleged inadequate or "sham" nature of Plaintiff's protective custody review hearings. (*See id.* at 7–9.) This Court dismissed the remaining claims for failure to state a claim for relief. (*See id.* at 10–11.)

Defendants answered the Amended Complaint on May 1, 2018, (Answer, ECF No. 39), and the matter proceeded to discovery. Fact discovery ended on January 15, 2019. (Nov. 27, 2018 Letter Order, ECF No. 48.) Thereafter, Defendants filed their first motion for summary judgment.

4

(Defs.' First Mot. for Summ. J., ECF No. 51.) Defendants' first argument in the motion was that Plaintiff's claims are moot because he only sought injunctive relief and officials released Plaintiff from IV. P.C. on May 29, 2018. (*See id.*) Plaintiff did not address this argument in his opposition to Defendants' first motion for summary judgment. (*See* Pl.'s Opp'n to Defs.' Mot. for Summ. J., ECF No. 59.)

Accordingly, this Court administratively terminated Defendants' motion for summary judgment and ordered additional briefing from Plaintiff regarding Defendants' argument that Plaintiff's claims are moot. (Sept. 30, 2019 Mem. Order, ECF No. 65.) Rather than submit additional briefing, however, Plaintiff submitted a motion to file a second amended complaint accompanied by a proposed Second Amended Complaint. (*See* Pl.'s Second Mot. to File Am. Compl., ECF No. 66.) The Second Amended Complaint is, in essence, identical to the first amended complaint except that it included a "Prayer for Relief" section that stated claims for compensatory and punitive damages. (*See* Second Am. Compl.) In a letter order dated August 28, 2020, this Court granted Plaintiff's motion to file an amended complaint and found that Plaintiff intended the Second Amended Complaint to be the operative complaint in this matter. (*See* Aug. 28, 2020 Letter Order, ECF No. 71.)

On April 9, 2021, Defendants filed the instant motion for summary judgment that is presently before this Court. (*See* Defs.' Second Mot. for Summ. J.) In the motion, Defendants argue that Plaintiff's procedural due process claims must fail because, according to Defendants, Plaintiff has no liberty interest in his custody status, and, in any event, Defendants afforded Plaintiff the process due him. (*See* Defs.' Br. in Supp. i–ii.) They also argue that Plaintiff's claims for compensatory and punitive damages must fail because Plaintiff suffered no physical injury and Plaintiff offers no evidence that Defendants acted with evil motive or intent. (*See id.*) Finally,

5

Defendants argue that this Court should dismiss Plaintiff's claims for injunctive relief as moot. (*See id.*)  Plaintiff filed his opposition to Defendants' motion on July 13, 2021.  (*See* Pl.'s Opp'n to Defs.' Second Mot. for Summ. J.)[2]

### III. LEGAL STANDARDS

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989).  An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is "material" only if it influences the outcome under the applicable law.  *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden.  *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate

---

[2] Plaintiff's opposition papers consist only of boilerplate language generally discussing the summary judgment standard and many exhibits, which are primarily copies of the grievances he filed at the prison.  (*See* Pl.'s Opp'n to Defs.' Second Mot. for Summ. J.)  In fact, Plaintiff's sole reference to Defendants' Statement of Uncontested Material Facts states that Defendants "rely heavily on information that SID fabricated to justify the reissuing [of] institutional infractions from the July 22, 2011 fight involving the Plaintiff and two other inmates."  (*Id.* at 13, ¶ 26.)  As discussed above, however, the reissuance of institutional infractions is not at issue in this matter. Rather, the only claims that survived this Court's *sua sponte* screening are Plaintiff's claims alleging a Fourteenth Amendment procedural due process violation against Defendants Cortez, Dolce, and Jantz in connection with prison officials' routine reviews of his placement in IV. P.C. (*See* Aug. 31, 2-17 Op.)

facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

## IV. <u>ANALYSIS</u>

As noted above, Defendants' motion for summary judgment raises four arguments: (1) this Court should dismiss Plaintiff's procedural due process claims because Plaintiff has no liberty interest in his custody status, and, in any event, Defendants afforded Plaintiff the process due him; (2) this Court should dismiss Plaintiff's complaint to the extent it seeks compensatory damages because he suffered no physical injury; (3) this Court should dismiss Plaintiff's complaint to the extent it seeks punitive damages because Plaintiff offers no evidence that Defendants acted with evil motive or intent; and (4) this Court should dismiss Plaintiff's complaint to the extent it seeks injunctive relief because he has been released from protective custody and, therefore, his claims for injunctive relief are moot. (*See* Defs.' Br. in Supp. i–ii.) The Court will address each argument in turn.

### A. Procedural Due Process Claims

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.  Generally, procedural due process requires notice and an opportunity to state objections before depriving a person of a protected interest. *See Bd. of Regents of State Colls. V. Roth*, 408 U.S. 564, 570 n.4 (1972).

A procedural due process analysis involves a two-step inquiry: first, whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause, of which defendants deprived him, and second, whether the process defendants afforded the complaining party to deprive him of that interest comported with constitutional requirements. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

#### 1. Protected liberty interest

Defendants argue that this Court should dismiss Plaintiff's claims because he has no protected liberty interest in his custody status. (*See* Defs.' Br. in Supp. 8.)  As discussed below, the Court finds that Defendants fail to demonstrate that Plaintiff has no protected liberty interest in returning to the general prison population.

A protected liberty interest may arise from one of two sources. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  A liberty interest may arise directly from the Fourteenth Amendment's Due Process Clause or from state-created statutory entitlement. *Id.*

#### a. Liberty interest arising from the Due Process Clause

Under the Due Process Clause itself, changes in the prisoner's conditions of confinement are not alone sufficient to create a liberty interest "as long as the conditions or degree of

8

confinement to which the prisoner is subjected is within the sentence imposed upon him and are not otherwise violative of the United States Constitution . . . ." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Rather, a liberty interest arises from the due process clause itself only "when severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Rechenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010). "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468. Moreover, such confinement "does not, in itself, violate the Constitution." *See Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992), *superseded on other grounds by statute*, Prison Litigation Reform Act 42 U.S.C. §§ 1997 – 1997j.

Here, Plaintiff is serving a life sentence and officials subjected him to confinement for approximately five and a half years. (*See* Defs.' Statement of Uncontested Material Facts ¶¶ 1, 30.) Although Plaintiff alleges the conditions of his confinement were less amenable and more restrictive than the conditions in general population, nothing Plaintiff alleges amounts to a "severe change" or "grievous loss." *See Rechenski*, 622 F.3d at 325. Rather, Plaintiff's confinement was non-punitive and of the type that inmates should reasonably anticipate receiving at some point in their incarceration. *See Hewitt*, 459 U.S. at 468. Accordingly, officials did not subject Plaintiff to confinement that exceeded the sentence imposed upon him or otherwise violated the Constitution. *See id.*; *Young*, 960 F.2d at 364. Therefore, the Due Process Clause itself does not give rise to a liberty interest in this matter.

### b. Liberty interest arising from state-created statutory entitlement

In contrast, liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In considering what constitutes "atypical and significant hardship" within the prison setting, the Third Circuit looks to the conditions and durations of the prisoner's segregated confinement. *See Shoats*, 213 F.3d at 144 (considering "the amount of time the prisoner was placed into disciplinary segregation; and . . . whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates"); *Griffin v. Vaughn*, 112 F.3d 703, 708–09 (3d Cir. 1997) ("If an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship, and accordingly, whether due process protection has been triggered."). The relevant comparison is to the conditions prisoners face in the general population. *See Williams v. Sec. Pa. Dep't of Corr.*, 848 F.3d 549, 564–65 (3rd Cir. 2017).

Defendants argue that Plaintiff has no state-law-created liberty interest because he does not, and cannot, show that he suffered an atypical and significant hardship in relation to the ordinary incidents of his confinement. (*See* Defs.' Br. in Supp. 9.) In support of their argument, Defendants point to the Third Circuit's decisions in *Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002) and *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002). (*See id.* at 10.)

In *Fraise*, prisoners filed suit under 42 U.S.C. § 1983 challenging the constitutionality as applied to them of a New Jersey prison policy that allows correctional officers to designate "security threat groups" ("STGs") and transfer core members of these groups to a special unit, the Security Threat Group Management Unit ("STGMU"). *Id.* at 509. The prisoners asserted that this policy violated the Due Process Clause of the Fourteenth Amendment, among other things. *See*

10

*id.* In affirming the District Court's order granting summary judgment for Defendants, the Third Circuit held that "the transfer to the STGMU does not impose an atypical or significant hardship in relation to the ordinary incidents of prison life." *Id.* at 522–23.

In *Torres*, a former state prisoner appealed the District Court's grant of summary judgment dismissing his Section 1983 procedural due process claim. *Torres*, 292 F.3d at 142. The Third Circuit affirmed the District Court's grant of summary judgment because the plaintiff, who officials had confined in disciplinary detention for fifteen days and administrative segregation for one hundred twenty days, failed to present evidence that he suffered a violation of a liberty interest. *Id.*

The instant case, however, is distinguishable from *Fraise* and *Torres*. For example, although the exact duration for which officials confined the prisoners in *Fraise* to the STGMU is unclear, it was no more than four years and nine days at the time the Third Circuit decided the case. *See Fraise*, 283 F.3d at 517 n.4 (noting that the STGMU opened on March 4, 1998). Moreover, the officials in *Torres* confined the prisoner to only fifteen days of disciplinary detention and one hundred days of administrative segregation. *Torres*, 292 F.3d at 142. In contrast, in the instant case, officials confined Plaintiff to IV. P.C. for over five and a half years. (*See* Defs.' Statement of Uncontested Material Facts ¶ 30.)

In other cases, the Third Circuit has determined that 6 years of confinement in a Management Control Unit, where officials strictly confined the prisoner to his cell save for 10 minutes a day to shower and 90 minutes to exercise in a caged area every two or three days, implicated a liberty interest. *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014). Similarly, the Third Circuit has previously held that eight years in administrative custody, where officials confine an inmate to his cell for 23 hours each day, force him to eat meals by himself, and prohibit

11

him from participating in organizational activities, is atypical and implicates a protected liberty interest. *See Shoats*, 213 F.3d at 143.

Here, the conditions and durations of Plaintiff's confinement were like those in *Allah* and *Shoats*. Officials placed Plaintiff in IV. P.C. on October 23, 2012, (*see* Defs.' Statement of Uncontested Material Facts ¶ 14), where he remained until his release more than five and a half years later on May 29, 2018. (*Id.* ¶ 30.) Plaintiff alleges that, while in IV. P.C., officials confined him to a single inmate cell for all but ten minutes per day to shower and one hour forty-five minutes two days a week for outdoor recreation. (*See* ECF No. 72 ¶¶ 60–61.) According to Plaintiff, the outdoor recreation is inside an 8'x12' cage with no form of exercise. (*Id.* ¶ 61.) Plaintiff also alleges that officials did not permit him contact with other inmates, did not allow him contact visits with family or friends unless he took a behavior modification program, and did not permit him to partake in other institutional or educational programs. (*See id*. ¶¶ 62–64.) Thus, the conditions and duration of Plaintiff's confinement were similar to the conditions and duration of confinement that officials subjected the prisoners in *Allah* and *Shoats*. Accordingly, the Third Circuit's decisions in those cases suggest a similar result here.

For these reasons, the Court finds that Defendants fail to demonstrate that Plaintiff lacked a protected liberty interest in returning to the general prison population. Thus, Defendants are not entitled to judgment as a matter of law, and the Court will deny summary judgment on this point.

### 2. Minimal Due Process Requirements

Even if Plaintiff had a protected liberty interest, Defendants alternatively argue that they nonetheless afforded Plaintiff the required due process. (*See* Defs.' Br. in Supp. 13.) For the reasons below, the Court will also deny summary judgment on this ground.

Before the Court may address Defendants' argument, the Court must determine what due process Defendants owed Plaintiff. *See Shoats*, 213 F.3d at 143. Defendants contend that the Court should answer this question "based on the language of the [state] regulations." (Defs.' Br. in Supp. 14.) According to Defendants, it follows that "so long as the prison administration adheres to state regulations, an inmate does not have a legitimate due process claim in connection with his continued, ongoing placement in involuntary protective custody." (*Id.*)

The Court disagrees. Although state regulations "may be of some assistance and guidance in determining [what process is due]," *see Layton v. Beyer*, 953 F.2d 839, 851 (3d Cir. 1992), state regulations "clearly do not, in and of themselves, define or control the requirements of the Constitution." *Id.* at 851–52. Instead, the minimum requirements of procedural due process "are a matter of federal law and are not diminished by the fact that the state may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek v. Jones*, 445 U.S. 480, 491 (1980). In other words, "where a plaintiff establishes a state-created liberty interest, a court must determine the level of process due by drawing from federal constitutional law, not from state laws, regulations, or policies." *Steele v. Cicchi*, 855 F.3d 494, 509 (3d Cir. 2017).

Here, Defendants focus their argument that they provided Plaintiff with the required due process on their technical adherence to state regulations. (*See* Defs.' Br. in Supp. 16–21.) Defendants' brief, however, fails to address whether Defendants complied with minimal due

13

process requirements under federal law. (*See id.*) For example, even if Defendants technically adhered to state regulations by providing Plaintiff with annual review hearings, Defendants fail to address whether those hearings provided Plaintiff with a *meaningful* opportunity for reconsideration of returning to the general prison population. *See Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986) (holding that a due process violation occurred where prison officials applied justifications for segregation in "rote fashion"). Thus, the Court finds that Defendants fail to demonstrate that they are entitled to judgment as a matter of law, and the Court will deny Defendants' motion for summary judgment on this ground.

### B. Compensatory Damages

Next, Defendants submit that this Court should dismiss the Second Amended Complaint to the extent it seeks compensatory damages because Plaintiff suffered no physical injury. (*See* Defs.' Br. in Supp. 21–23.) As discussed below, the Court will deny Defendants' motion for summary judgment as to Plaintiff's claims for compensatory damages.

The Prison Litigation Reform Act ("PLRA") states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit has interpreted the scope of Section 1997e(e) as applying to prisoners' claims for compensatory damages, but not to claims for nominal or punitive damages or injunctive or declaratory relief. S*ee Mitchell v. Horn*, 318 F.3d 523, 533–534 (3d Cir. 2003). Accordingly, Section 1997e(e) bars prisoners from recovering compensatory damages unless the plaintiff demonstrates physical injury. *See id.*

Here, the Second Amended Complaint seeks compensatory damages. (*See* Second Am. Compl.) Defendants contend, however, that Plaintiff has not alleged any physical injury as a result

14

of any action or inaction of the Defendants.  (*See* Defs.' Br. in Supp. 22.)  Construing the Second Amended Complaint liberally, the Court disagrees.

"Deprivation of exercise for an extended period of time is potentially injurious to physical health."  *Williams v. Goord*, 111 F. Supp. 2d 280, 291 n.4 (S.D.N.Y. 2000) (denying defendants' motion for summary judgment based on 42 U.S.C. § 1997e(e) where Plaintiff alleged that he was deprived of the opportunity to exercise for 28 consecutive days and testified at his deposition that his physical health had been "threatened" because exercise is necessary to "stay in shape, stay healthy").  Moreover, "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened."  *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)

In this case, Plaintiff alleges that Defendants have not provided him with adequate recreation and exercise for over five and a half years.  *See* Second Am. Compl. ¶ 66.  Specifically, Plaintiff alleges that Defendants confined him to a single cell for all but ten minutes per day to shower and one hour and forty-five minutes two days a week for "outdoor recreation."  *See* Am. Compl. ¶ 60.  This "outdoor recreation," he alleges, was inside an 8'x12' cage "with no form of exercise."  *Id.*  Thus, Plaintiff has alleged sufficient facts for the Court to infer that Plaintiff has suffered a physical injury.

Defendants also point to Plaintiff's deposition testimony, where, according to Defendants, he testified that he did not sustain any physical injuries while he was in protective custody.  (Defs.' Statement of Uncontested Material Facts ¶ 38.)  In particular, when asked, "[d]id you sustain any physical injuries while you were in IPC?," Plaintiff responded, "I never—not from the COs or anything . . . And not—not like fighting or nothing like that."  (*Id.*)

15

Viewed in the light most favorable to the nonmoving party, Plaintiff's testimony does not necessarily imply that he did not suffer any type of physical injury during his confinement. "For example, plaintiff may believe that 'physical injury' refers to a permanent or traumatic injury such as the loss of a limb or a cut requiring stiches" as opposed to less traumatic harms that may result from lack of exercise. *See Williams*, 111 F. Supp. at 291 n.4. Further, Plaintiff may have misinterpreted the question as inquiring about physical injuries caused by some sort of fight or altercation. Thus, the Court finds that Defendants fail to properly support their assertion that Plaintiff did not suffer physical injury, and the Court will deny summary judgment as to Plaintiff's claims for compensatory damages.

### C. Punitive Damages

Defendants also contend that this Court should dismiss Plaintiff's claims to the extent he seeks punitive damages because there is no evidence that Defendants acted with reckless or callous disregard of Plaintiff's rights. (*See* Defs.' Br. in Supp. 23–24.) The Court agrees.

"Punitive damages in § 1983 cases are available where the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'" *Keenan v. City of Philadelphia*, 983 F.2d 459, 469–470 (3d Cir. 1992). "However, 'punitive damages in general represent a limited remedy, to be reserved for special circumstances.'" *Id.* at 470. Courts, therefore, must reserve punitive damages for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. *Id.*

In the instant case, Plaintiff does not allege or plead facts permitting the Court to infer any conduct of the Defendants that amounts to recklessness or callousness with respect to officials' routine reviews of his placement in IV. P.C. (*See generally* Second Am. Compl.) Moreover, the record is devoid of any facts or evidence indicating that any of the Defendants acted with reckless

16

or callous indifference to Plaintiff's rights. (*See id.*) Accordingly, the Court will grant summary judgment on Plaintiff's claims to the extent he seeks punitive damages.

### D. Mootness

Lastly, Defendants assert that Plaintiff's claims are moot to the extent that he requests injunctive relief. (*See* Defs.' Br. in Supp. 24–26.) For the reasons below, the Court will grant summary judgment on Plaintiff's claims to the extent he seeks injunctive relief.

Under Article III of the Constitution, federal courts cannot adjudicate an issue unless they are presented with an actual "case or controversy." *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 61 (3d Cir. 1991). A case is ordinarily moot, and, hence, nonjusticiable as lacking a "case or controversy," if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Id.* It is well-settled, however, that even when the question presented is no longer "live" and the parties lack a legally cognizable interest in the outcome, a case may continue to decision if the problem presented "is capable of repetition yet evading review." *See id.* For this exception to apply, two elements must be present: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* A party cannot base such an expectation on mere conjecture; he must support it with evidence in the record. *See Abdul-Akbar v. Watson*, 4 F.3d 195, 207 (3d Cir. 1993).

In the present case, Plaintiff's original Complaint did not contain a "Prayer for Relief" section, but it did contain a paragraph suggesting he was only seeking injunctive relief, *i.e.*, for officials to release him from IV. P.C. (*See* Compl. ¶ 56.) Although Plaintiff subsequently deleted that paragraph, the Second Amended Complaint included a "Prayer for Relief" section, which

17

prays that this Court "grant other just and equitable relief that this Honorable Court deems necessary." (*See* Second Am. Compl.) Thus, the operative complaint still contains what the Court construes as claims for injunctive relief, among others.

Officials, however, released Plaintiff from IV. P.C. and placed him into general population on May 29, 2018. (Defs.' Statement of Uncontested Material Facts ¶ 30.) Thus, Plaintiff's claims for injunctive relief are moot unless the "capable of repetition" exception applies. *See Praxis Properties, Inc.*, 947 F.2d at 61.

The Court concludes that the "capable of repetition" exception does not apply. Although Plaintiff's confinement ended prior to this action being fully litigated, the record is devoid of any evidence suggesting that officials will place Plaintiff in IV. P.C. again. Accordingly, the exception does not apply and Plaintiff's claims for injunctive relief are moot. *See id.* The Court, therefore, will grant summary judgment on Plaintiff's claims to the extent they seek injunctive relief.

## V.     CONCLUSION

For the foregoing reasons, the Court will grant summary judgment as to Plaintiff's claims to the extent they seek punitive damages and injunctive relief. The Court will deny summary judgment in all other respects. An appropriate Order follows.

/s/ Zahid N. Quraishi
**Zahid N. Quraishi**
**United States District Judge**